Argued  October  22,  decided  November  12,  1912.

### STATE v. BILLUPS.*

(127  Pac.  686.)

**Intoxicating Liquors—Local Option Law—Sufficiency of Indictment.**

1.  The indictment in a prosecution for selling in violation of the local option law alleged that at the general election held June 1, 1908, in Crook County, a majority of the electors voted that the sale of intoxicants should be prohibited in the entire county, whereupon the county court on June 12, 1908, made an order declaring the result "and absolutely prohibiting the sale of intoxicating liquors for beverage purposes in said Crook County as a whole, and declaring it to be unlawful to sell, exchange, or give away any intoxicating liquors for beverage purposes within said Crook County until such time as the qualified voters of said county, as a whole, by a majority of votes, declared otherwise.   That said order of prohibition has ever since said June 12, 1908, and still is in full force within said Crook County," and that on October 12, 1910, accused unlawfully sold intoxicants within the county.   Section 4929, L. O. L., requires the county court on the 11th day after election, if prohibition carries, to immediately make an order declaring the result "and absolutely prohibiting the sale of intoxicating liquors within the described limits, except for the purposes and under the regulations specified herein until such time as the qualified voters therein at a local election held for that purpose by a majority vote decide otherwise," and makes such order prima facie evidence of compliance with the law.   Held, that the indictment was sufficient on demurrer and advised accused of the crime with which he was charged, and was not insufficient with respect to the allegations as to the order of the county court proclaiming the result of the election.

**Indictment and Information—Misdemeanor Cases.**

2.  An indictment charging a statutory misdemeanor is sufficient if it alleges the facts constituting the offense in the words

---

*On the question whether proof of sale of "beer" is sufficient to sustain a conviction under statutes prohibiting sale of vinous, malt, fermented, or intoxicating liquors, see note in 25 L. R. A. (N. S.) 446.

As to whether proof of sale of "lager beer" is sufficient to sustain a conviction for unlawful sale of "intoxicating liquors," in absence of proof that it is intoxicating, see note in 7 L. R. A. (N. S.) 195.    REPORTER.

of the statute and with such particularity as to inform accused of the offense charged.

### Intoxicating Liquors—Local Option—Order Calling Election—Time.

3. Section 4920, L. O. L., provides that, on the filing of a local option petition, the county court should order an election. Section 4922 requires the petition to be filed not less than 30, nor more than 90, days before the election. Section 4925 requires the county clerk, upon receipt of the petition, to immediately file it, and Section 4926 provides that at least 20 days previous to any election the clerk shall deliver to the sheriff at least five notices of the election for each election precinct, and the sheriff shall at least 12 days before the election post such notices. The county clerk delivered the requisite number of election notices to the sheriff on May 8th and 9th, and the sheriff posted them on May 9th, but the order calling the election was not made until May 13th. Held, that the statute did not require the order calling an election to be made immediately upon the filing of the petition or any given number of days before the election, though the requisite number of election notices must be posted 12 days before election to render a prohibition majority valid, if failure to comply with the statute would affect the result in the entire county, and it could not be claimed that the election held on June 1st, resulting in prohibition, was invalid on the ground that the order of the county court calling the election was not made within the time limited.

### Intoxicating Liquors—Local Option—Collateral Attack of Proceedings.

4. If the validity of a local option election is directly assailed, the provisions of the local option statute are construed less liberally than when collaterally attacked.

### Intoxicating Liquors—Local Option—Proceedings—Signing of Petition—"Legal Voters"—"Registered Voters."

5. A finding by the county court in an order calling the election that a petition for a local option election was signed by "legal" voters, when Section 4920, L. O. L., requires such petition to be signed by "registered" voters, would not invalidate the election; "legal" voters being synonymous with "registered" voters as used in the statute.

**Intoxicating Liquors—Local Option—Order Declaring Result—Sufficiency.**

6. An order of the county court made June 12, 1908, declaring the result of the local option election held on June 1st provided that it "is ordered, adjudged, and decreed that on and after July 1, 1908, in the entire county of Crook, it hereby is absolutely prohibited to sell, exchange, give away, or in any manner dispose of intoxicating liquors for beverage purposes within said Crook County, except as provided for by the local option laws, chapter 2, pages 41 and 50, inclusive, of the Laws of 1905, until such time as the qualified voters of said Crook County, at a local election held for that purpose, by a majority vote, decide otherwise." The order did not refer to the exceptions permitting liquor to be sold prescribed by Section 4921, L. O. L., providing that the act shall not be construed as prohibiting the sale of pure alcohol for scientific purposes, wines for sacramental purposes, or alcoholic stimulants as medicines, or as prohibiting a registered pharmacist from selling liquors to another druggist. Section 4929 provides that the court shall, 11 days after the election or thereafter, if the majority of the voters favor prohibition, immediately make an order declaring the result and "absolutely prohibiting the sale of intoxicating liquors within the prescribed limits, except for the purposes and under the regulations specified herein, until such time as the qualified voters therein, at a local election held for that purpose by a majority vote, decide otherwise." The indictment charged the sale of intoxicating liquors "for beverage purposes." Held, that the order declaring the result of the election was not insufficient on the ground that it differed from the order alleged in the indictment in including the provision "except as provided * * year 1905," and from the statutory order in omitting the exceptions prescribed by Section 4921 and inserting the phrase "exchange, give away, or in any manner dispose of" and "for beverage purposes."

**Intoxicating Liquors—Local Option Law.**

7. It is the percentage of alcohol in liquor which determines whether it is intoxicating within the local option law, and not the name or character of the place where it is sold, and proof that "beer" was sold without qualification raised a legal implication that the liquid was intoxicating.

Intoxicating Liquors—Local Option Law—Character of Intoxi-
     cants.
   8. That the liquor sold was intoxicating could be established
in a local option prosecution by chemical analysis or by evidence
of one who had drunk it, if he was capable of being stimulated,
so that an instruction that the jury could consider that the beer
purchased was obtained in a "near beer" saloon in determining
whether it was intoxicating was properly refused.

From Crook: WILLIAM L. BRADSHAW, Judge.

The defendant, John Billups, was convicted of violat-
ing the local option law, and he appeals.     AFFIRMED.

For appellant there was a brief over the names of
*Mr. Vernon A. Forbes, Mr. George L. Bernier,* and *Mr.
Hollis S. Wilson,* with an oral argument by *Mr. Wilson.*

For the State there was a brief over the names of
*Mr. Fred W. Wilson,* District Attorney, and *Mr. Andrew
M. Crawford,* Attorney General, with an oral argument
by *Mr. Crawford.*

MR. JUSTICE MOORE delivered the opinion of the court.

The defendant, John Billups, was convicted of the
crime of selling intoxicating liquors in violation of the
local option law, and he appeals from the judgment ren-
dered on the verdict.

1. His counsel maintain that an error was committed
in overruling a demurrer to the indictment, interposed
on the ground *inter alia* that it did not state facts suf-
ficient to constitute the commission of a crime.     The
formal parts of the accusation strictly conform to the
averments of an information, the charging part of which
has been approved.  *State* v. *Carmody,* 50 Or. 1 (91 Pac.
446, 1081: 12 L. R. A. [N. S.] 828).     The indictment
herein alleges, in effect, that at the general election held
June 1, 1908, in Crook County, as a whole, a majority
of the qualified electors determined by their vote that
the sale of intoxicating liquors should be prohibited in

the entire county, whereupon the county court on June 12, 1908, made "an order declaring the result of said vote and absolutely prohibiting the sale of intoxicating liquors for beverage purposes in said Crook County, as a whole, and declaring it to be unlawful to sell, exchange, or give away any intoxicating liquor for beverage purposes within said Crook County, as a whole, until such time as the qualified voters of said Crook County, as a whole, by a majority vote declared otherwise; that said order of prohibition has ever since said June 12, 1908, and still is, in full force and effect within the said Crook County, Oregon, as a whole." It is further charged that thereafter, to wit, on October 14, 1910, the defendant, within that county, unlawfully sold to J. B. Flanders intoxicating liquor, viz., two bottles of beer. The statute in force June 1, 1908, declared that, when at an election held for that purpose in a designated territory a majority of all the votes cast upon the question were in favor of prohibition, the law should take effect on the 1st day of July following. Laws Or. 1905, p. 43, Section 3.

2. The accusation in the case at bar is for a misdemeanor created by statute, and in such a case it is sufficient to set forth the facts constituting the offense in the words of the enactment and with such particularity as to inform the party accused of the commission of the crime imputed to him. *State* v. *Shaw,* 22 Or. 287, 291 (29 Pac. 1028); *State* v. *Koshland,* 25 Or. 178, 183 (35 Pac. 32); *State* v. *Carmody,* 50 Or. 1, 6 (91 Pac. 446, 1081: 12 L. R. A. [N. S.] 828); *State* v. *Miller,* 54 Or. 381, 384 (103 Pac. 519); *State* v. *Townsend,* 60 Or. 223, 231 (118 Pac. 1020).

The averment in the indictment that "ever since said June 12, 1908," the prohibition order has been in force is an erroneous statement; but, since the defendant was charged with selling liquors after the law went into effect, to wit, on October 14, 1910, he could not have

been prejudiced in any manner by the misstatement. It is insisted that the order of the county court proclaiming the result of the election is not such a written declaration as the statute requires, and therefore an error was committed in overruling the demurrer. The prohibition law, referring to the county court, contains a clause as follows:

"Said court shall, on the eleventh day after the election, or as soon thereafter as practicable, hold a special session; and if a majority of the votes hereon in the county as a whole are 'for prohibition,' said court shall immediately make an order declaring the result of said vote and absolutely prohibiting the sale of intoxicating liquors within the prescribed limits, except for the purposes and under the regulations specified herein, until such time as the qualified voters therein, at a legal election held for that purpose, by a majority vote decide otherwise; and the order thus made shall be held to be *prima facie* evidence that all the provisions of the law have been complied with in giving notice of and holding such election, and in counting and returning the votes and declaring the results thereof." Section 4929, L. O. L.

By comparing the averment of the indictment hereinbefore quoted with a copy of the information set forth in the case of *State* v. *Carmody,* 50 Or. 1 (91 Pac. 446, 1081: 12 L. R. A. [N. S.] 828), it will be observed that, excepting the date on which the respective orders of the county court were made and the territory in which they were to be in force, the language of the separate charges is identical. In the case cited, the sufficiency of the formal charge in the respect noted was upheld, and the rule thus established has been subsequently approved. *State* v. *Runyon,* 62 Or. 246 (124 Pac. 259). The indictment states facts sufficient to advise the defendant of the commission of the crime with which he was charged, and no error was committed in overruling the demurrer.

3. It is contended that the order of the county court calling the election was not made within the time lim-

ited, and, this being so, any vote that may have been taken on the question of prohibiting the sale of intoxicating liquors was ineffectual for that purpose, and errors were committed in denying the defendant's request to direct a verdict of not guilty and in charging the jury that the local option liquor law was in force in the entire county, to which ruling and instruction exceptions were made.

The statute adverted to, as far as material in the case at bar, reads as follows:

"Whenever a petition therefor signed by not less than ten per cent of the registered voters of any county in the State, * * shall be filed with the county clerk of such county in the manner in this act prescribed, the county court of such county shall order an election to be held at the time mentioned in such petition, * * to determine whether the sale of intoxicating liquors shall be prohibited in such county. * * In determining whether any such petition contains the requisite percentage of legal voters, said percentage shall be based on the total vote in such county * * for justice of the Supreme Court, at the last preceding general election." Section 4920, L. O. L.

"The petition therefor shall be filed with the county clerk not less than thirty nor more than ninety days before the day of election." Section 4922, L. O. L.

"The county clerk shall upon the receipt of such petition immediately file the same and shall thereupon compare the signatures of the electors signing the same with their signatures on the registration books of the election then pending, or if none pending, then with the signatures on the registration books and blanks on file in his office for the preceding general election." Section 4925, L. O. L.

"At least twenty days previous to any election hereunder the county clerk shall deliver to the sheriff of the county at least five notices of the election for each election precinct in said county voting on the question. * * It shall be the duty of the sheriff at least twelve days before any election hereunder to post said notices in pub-

lic places in the vicinity of the polling place or places. Thereupon the clerk and the sheriff shall each briefly enter of record their compliance with the provisions of this section, and such record shall be *prima facie* evidence that all the provisions of this section have been fully complied with." Section 4926, L. O. L.

The bill of exceptions shows that on May 8 and 9, 1908, the county clerk of Crook County delivered the requisite number of election notices to the sheriff, who on the latter day posted them as required by law, but that the order calling the election was not made until May 13th of that year. The local option law does not declare when such order shall be made, nor does it provide that the calling of the election shall be a condition precedent to the issuing or posting of the election notices. The command found in Section 4920, L. O. L., that, whenever a petition therefor shall be filed with the county clerk, the county court shall order an election to be held, etc., cannot reasonably be construed to mean that the order should immediately be made upon the filing of the petition, for such an interpretation of the statute would render it necessary for the county courts constantly to be in session during the time in which a petition might be filed, or for a period of not less than 30 nor more than 90 days prior to the day of election. Section 4922, L. O. L.

The posting of election notices at least 12 days previous to the day of election is demanded by law. The statute prescribing the calling of the election does not provide that the order therefor shall be made on or before a given number of days prior to the day of election. Each legal voter in a precinct is entitled to have the requisite number of election notices posted therein, at least 12 days prior to the day of election, in order to render a majority vote in favor of prohibition valid, if a failure in this respect would probably affect the result in the entire county. *Guernsey* v. *McHaley,* 52 Or. 555 (98 Pac. 158) ; *Roesch* v. *Henry,* 54 Or. 230 (103 Pac. 439).

The election herein having been held June 1, 1908, the notices were required to have been and were posted on or before the 19th of the preceding month, and since the election had been ordered by the county court prior thereto, or on May 13, 1908, the qualified electors were thus afforded all the information that the law demands. It should be kept in mind that the defense to this action, as far as it challenges the form and manner invoked to put into effect the local option law, is a collateral attack.

4. When such proceedings are expressly assailed, the provisions of the statute appealed to are construed with less liberality than when indirectly involved. *Marsden* v. *Harlocher,* 48 Or. 90 (85 Pac. 328: 120 Am. St. Rep. 786) ; *Hall* v. *Dunn,* 52 Or. 475 (97 Pac. 811: 25 L. R. A. [N. S.] 193) ; *Guernsey* v. *McHaley,* 52 Or. 555 (98 Pac. 158). In actions not instituted within the time and manner provided by law, nor prosecuted for the express purpose of annuling the application to a court for aid in the enforcement of rights asserted to have been conferred by statute, the proceedings are interpreted with greater strictness and are usually upheld unless they are void. Van Fleet, Col. Attack, Section 16; *State* v. *Murrell,* 57 Or. 305 (111 Pac. 689) ; *State* v. *Maddock,* 58 Or. 542 (115 Pac. 426) ; *State* v. *Hearn,* 59 Or. 227 (115 Pac. 1066: 117 Pac. 412). In *Roesch* v. *Henry,* 54 Or. 230, 246 (103 Pac. 439, 445), however, which was a direct proceeding, Mr. Justice McBRIDE, referring to the provisions of the local option law, very justly says: "I believe the statute so far directory that a substantial compliance is all that is necessary, and that jurisdiction comes in the first instance from the petition and order of the court submitting the question of prohibition to a vote, and not from the notice, which is a mere incident." Believing that the order calling the election is not void and was made in ample time to furnish legal notice, no errors were committed in the respects mentioned.

5. It is contended that the order calling the election was insufficient in that the county court thereby found that the petition was signed by 348 "legal" voters, or more than 10 per cent of all the votes cast for Justice of the Supreme Court at the last preceding general election, when the statute demands that the petition for a local option election shall be signed by "registered" voters. Section 4920, L. O. L. A registered voter is a legal voter, and the conclusion of the court that the petition was signed by the requisite number of legal voters does not necessarily negative the fact that the petitioners were not duly registered. The section of the statute referred to makes "legal" voters synonymous with "registered" voters, and hence we conclude that the point here insisted upon is without merit.

6. It is asserted that, admitting in evidence, over objection and exception, a certified copy of the order of the court, declaring the result of the election and prohibiting the sale of intoxicating liquors in Crook County, an error was committed. The order complained of was made June 12, 1908, and reads as follows:

"In the matter of the vote for or against prohibition of the sale of intoxicating liquors for beverage purposes for the entire county of Crook, held June 1, 1908. Now at this time this matter coming on to be heard upon the abstract of votes cast at a general election held June 1, 1908, in said Crook County, Oregon, upon the question, 'Vote for or against prohibition of the sale of intoxicating liquors for beverage purposes for the entire county of Crook,' and it appearing to us from said abstract of votes, and the court finds therefrom, that the result of such vote upon said question resulted as follows: For prohibition 1,140 votes; against prohibition 556 votes; majority for prohibition 584 votes for entire county of Crook. Therefore it is ordered, adjudged, and decreed that on and after July 1, 1908, in the entire county of Crook, be and it hereby is absolutely prohibited to sell, exchange, give away, or in any manner dispose of intoxicating liquors for beverage purposes within said Crook

County, Oregon, except as provided for by the local option laws, chapter 2, pages 41 and 50, inclusive, of the session laws of the State of Oregon for the year 1905, until such time as the qualified voters of said Crook County, at a legal election held for that purpose, by a majority vote decide otherwise."

It is argued that the utterance thus quoted contains language not found in the order declared on in the indictment, to wit: "Except as provided for by the local option laws, chapter 2, pages 41 to 50, inclusive, of the session laws of the State of Oregon for the year 1905"— and that the order offered in evidence differs from the statutory order required in that, it omits the exception prescribed by the local option law, and inserts the phrase, "exchange, give away, or in any manner dispose of," and "for beverage purposes."

The local option law, when put into force in any designated territory, does not interdict the sale therein of pure alcohol for scientific or manufacturing purposes, or wines to church officials for sacramental purposes, or alcoholic stimulants as medicines, nor is a registered pharmacist prevented from selling alcoholic liquors to another duly enrolled druggist. Section 4921, L. O. L. The exceptions thus noted, which are not adverted to in the declaration of the result of the election, do not refer to the sale of intoxicating liquors for beverage purposes, and for that reason it is contended that the order in question does not create *prima facie* evidence of the regularity of the proceedings specified and was improperly received in evidence.

The sale of intoxicating liquors can be prohibited only for beverage purposes, and such restriction, when duly inaugurated, continues only until regularly changed in the manner prescribed. If, therefore, in declaring the result of a majority vote "for prohibition," a county court made an order absolutely prohibiting the sale of intoxicating liquors for all purposes, such written direc-

tion would be inoperative in respect to the exceptions noted, for the statute regulating the matter would necessarily annul the order of the county court in that particular. So, too, if the sale of intoxicating liquors for beverage purposes were by order of the county court absolutely prohibited, without any limitation as to time, the statute authorizing the qualified electors by a majority vote at a legal election to decide "against prohibition," a subsequent vote to that effect and an order based thereon sanctioning the licensing of saloons, would necessarily supersede the previous written direction of the court. It is believed that the clause, "except for the purpose and under the regulations specified herein, until such time as the qualified voters therein, at a legal election held for that purpose, by a majority vote decide otherwise," to be found in Section 4929, L. O. L., is a parenthetical expression, and may be stricken out without impairing in any manner the force or effect of the regulation. By eliminating the language last quoted, the section of the statute referred to, as far as important herein, will read as follows:

"Said court shall, on the eleventh day after the election, or as soon thereafter as practicable, hold a special session and if a majority of the votes hereon in the county as a whole * * are 'for prohibition,' said court shall immediately make an order declaring the result of said vote and absolutely prohibiting the sale of intoxicating liquors within the prescribed limits; and the order thus made shall be held to be *prima facie* evidence that all the provisions of the law have been complied with in giving notice of and holding said election, and in counting and returning the votes and declaring the results thereof."

The written declaration of the county absolutely prohibiting the sale of intoxicating liquors, pursuant to a majority vote "for prohibition," is the order that is "thus" made and which affords *prima facie* evidence of a compliance with the several provisions of the specified

law.   In prosecutions for forgery, allegations of sums, names, dates, and the like are material and must be proved as alleged. *Shirley* v. *State,* 1 Or. 269.   The defendant was charged with unlawfully selling intoxicating liquors, not with the crime of forgery or any kindred offense requiring such particularity of description, and hence the form of the order of the court is of no great importance so long as the indictment avers that the order was made declaring the result of the election and absolutely prohibiting the sale of intoxicating liquors, and was in force when the provisions were violated.   The accusation alleges that the sale of such liquors "for beverage purposes" was interdicted.   The quoted phrase is used seven times in Section 4927, L. O. L.   As a sale for such purpose signifies that the vendor for a consideration transferred to the purchaser the title to and the possession of alcoholic liquors to gratify an appetite for intoxicants, or for the mental exaltation or physical effect which the imbibing of a stimulant affords, as contradistinguished from a sale of such liquor for any of the objects authorized by the local option law (*Gue* v. *City of Eugene,* 53 Or. 282, 288: 100 Pac. 254: 18 Ann. Cas. 188), the averment is sufficient, and the order was admissible in evidence.   No error was committed in the respects asserted. *State* v. *Runyon,* 62 Or. 246 (124 Pac. 259, 260).

The testimony of the prosecuting witness is to the effect that, entering the defendant's saloon, where was displayed a sign which announced "Near Beer Sold," he called for beer without designating the kind of liquor desired, whereupon the defendant's counsel requested the court to charge the jury as follows:

"In determining whether the beer mentioned in the indictment was intoxicating, you have the right to consider the fact, if such you believe to be the fact, that such beer was obtained in a 'near beer saloon.'"

Sig. 10

The request having been denied and an exception taken, it is maintained that an error was thereby commited. "When beer," says Mr. Chief Justice BEAN in *State* v. *Carmody,* 50 Or. 1, 7 (91 Pac. 446, 448: 12 L. R. A. [N. S.] 828), "is called for at the bar in a saloon or hotel, the bartender would know at once, from the common use of the word, that strong beer—a spirituous or intoxicating beer—was wanted; and, if any other kind was wanted, the word would be qualified, and the particular kind would be named, as root beer, or small beer, etc. When, therefore, the word 'beer' is used in a court by a witness, the court will take judicial notice that it means a malt and an intoxicating liquor, or such meaning will be a presumption of fact, and in the meaning of the word itself there will be *prima facie* proof that it is malt or intoxicating liquor that is meant." The bill of exceptions does not purport to contain all the testimony given at the trial, and, for aught that appears from the transcript, evidence may have been received conclusively showing that the beer sold by the defendant was so "near" the genuine article as to be intoxicating.

7. It is the percentage of alcohol contained in a given quantity of liquid which when imbibed renders spirituous, malt, and vinous liquors intoxicating, and not the place where such beverages are kept for sale, not the signs there displayed to attract the attention of customers. When the State proved that "beer" without any qualifying words as to its kind was sold by the defendant, the law implied that the liquid was intoxicating. It then devolved upon the accused to refute such tacit inference and to introduce evidence to show that the beverage in question was not inebriating.

8. Such fact could have been established by chemical analysis of the liquid sold, or by the testimony of persons who had partaken of the drink and whose system had not been so saturated and deadened by the constant use of

alcoholic liquor as to be incapable of feeling the effect of the stimulant. The place where the liquor was kept for sale and the sign referred to were wholly immaterial matters, and no error was committed in refusing to give the requested instruction.

Other errors are assigned; but, deeming them unimportant, the judgment is affirmed.          AFFIRMED.

