Argued and submitted September 16, reversed and remanded for new trial
November 19, 1986

## STATE OF OREGON,
*Respondent,*

*v.*

## RANDALL DEAN OLLILA,
*Appellant.*

(M 66722; CA A39864)

728 P2d 900

Steven L. Price, Hillsboro, argued the cause and filed the brief for appellant.

Richard D. Wasserman, Assistant Attorney General,

Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Nancy Diamond, Certified Law Clerk, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

Defendant was convicted by a jury of driving while under the influence of intoxicants, ORS 813.010, and criminal mischief. ORS 164.354. He assigns as error the trial court's admission of an expert witness' response to a hypothetical question which assumed facts not in evidence and its refusal to grant a mistrial after the arresting police officer testified that defendant had informed him that he had a drinking problem. We reverse.

Defendant was arrested and charged with both offenses after an accident in which the pickup truck that he was driving collided with another vehicle. The accident occurred on January 30, 1985, at approximately 3:20 p.m. Police officers arrived moments later and, after seeing a case of beer in the truck, administered a field sobriety test. At 4:30 p.m., defendant submitted to a breath test, the results of which indicated a blood alcohol content of .08 percent.

Defendant contends that the trial court erred in permitting Grimsbo, the state's expert on Intoxilyzer tests, to respond to the following hypothetical question: "Assuming someone weighs 165 pounds * * * and he's 5'9" how many beers would he have to drink [in a two to three-hour period] * * * to reach say, a .10?" Grimsbo's response was "six and [a] half to seven." The question was apparently asked in an attempt to discredit defendant's assertion that he had had as few as four and at most six beers before the accident.

The state concedes that no evidence had been presented matching defendant's physical characteristics and those referred to in the hypothetical question, and it does not contend that Grimsbo had personal knowledge of defendant's dimensions. It contends, however, that, because of defendant's presence in the courtroom, the jury could not have been misled by the opinion evidence, because the jury could discount the opinion if it concluded from its own observation that defendant's height and weight differed materially from that of the man portrayed in the hypothetical.

■ OEC 703 provides the basis for an expert's opinion:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a

type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

The rule is clearly more conducive to admissibility of expert testimony than the pre-code requirement that an expert's opinion be based on facts in evidence or facts within the personal knowledge of the expert. *State v. Stringer*, 291 Or 527, 633 P2d 770 (1981). However, it does not authorize the introduction of an expert opinion which is based on facts that may or may not be perceived by the jury or the expert. Apparently, that is the interpretation the state is suggesting that we adopt, because neither the jury nor Grimsbo was asked to formulate a lay opinion with respect to defendant's size. We decline to speculate on whether either the jury or Grimsbo did in fact consider defendant's size. Thus, we conclude that the trial court erred in allowing Grimsbo to answer the question.

■ The state contends that, even if admitting Grimsbo's response was error, the error was harmless, because the discrepancy between the blood alcohol content attributed to the man in the hypothetical and that of defendant, as measured one hour after the accident, diminished the prejudicial effect of the expert's opinion. In other words, it argues that adding yet another extraneous fact to the hypothetical increased the probability that the jury would discount the expert's opinion.

We disagree with the contention that the discrepancy lessened the resulting prejudice to defendant. It not only assured a response contrary to defendant's testimony, but may also have suggested to the jury that defendant's blood alcohol content was higher than .08 percent at the time of the accident, a conclusion which is not supported by the evidence.

■ Defendant's second assignment of error is directed at the trial court's failure to grant a mistrial after the arresting officer testified, over defendant's objection, that defendant told him that he had a drinking problem and that he sometimes drank up to a 12-pack of beer a day. Defendant argues that that testimony effectively denied him a fair trial, despite the fact that the judge admonished the jury to disregard the

testimony.[1] He contends that the officer's testimony was offered only to show that, on the day of the accident, defendant acted in conformity with his drinking problem and that it therefore constitutes inadmissible character evidence.[2] In the

---

[1] Relevant portions of the record are as follows:

"Prosecutor:     What did he [defendant] tell you about his drinking problem?

"Defense:     Objection your honor.

"Court:     Overruled.

"Prosecutor:     Thank you.

"Witness:     He stated that he did have a drinking problem and that sometimes he will drink up to a twelve pack of beer in a day.

"Defense:     Again, your honor, I'll object and I'll move to strike and I have a matter for the court.

"Court:     Alright, would the jury retire to the jury room for a minute.

[Pause]

"Defense:     Your honor I move the court for a mistrial at this point based on the question just elicited over my objection, that the defendant has a drinking problem and sometimes consumed a half case or a twelve pack or twelve beers a day. That's simply prior bad acts and has no relevance in this particular case whatsoever - They're prejudicial - they don't prove this case. And I think they are such that the jury has been put in a position where they cannot be fair in this case based on that.

"Court:     Well, I think I'm going - I think I will strike the response and the question. Probably shouldn't have allowed it but I don't really think it's prejudicial to the defendant, enough to justify a mistrial. So the motion for mistrial will be denied.

"Will you get the jury back.

[Jury returns]

"Court:     (Continuing) I've reconsidered my ruling on the motion to strike the last question and answer about a possible drinking problem. It's really irrelevant. The jury will disregard the question and answer on that issue."

[2] OEC 404 provides:

"(1) Evidence of a person's character or trait of character is admissible when it is an essential element of a charge, claim or defense.

"(2) Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

"(a) Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;

"(b) Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same or evidence of a character trait of peacefulness of the victim offered by the prosecution to rebut

alternative, he contends that the testimony was inadmissible, because its probative value was substantially outweighed by its prejudicial effect.[3] The state does not argue that the evidence was admissible, and it was not. It contends, rather, that the court's admonition to the jury to disregard the evidence assured defendant a fair trial. Defendant contends that the curative instruction was too little and too late.

A motion for mistrial should be granted only if the testimony is so prejudicial that a curative instruction cannot assure a fair trial. *State v. Atkinson,* 28 Or App 909, 917, 562 P2d 978 (1977). Here, although the testimony did not refer to the commission of an act or acts identical to those with which defendant was charged, *compare State v. Jones,* 279 Or 55, 566 P2d 867 (1977) (testimony that the rape defendant "had done it so many times before"), because it was a close case and credibility was a key issue, we conclude that, when viewed in conjunction with the prejudice attributable to the inadmissible hypothetical question, the error was not harmless. Defendant is entitled to a new trial.

Reversed and remanded for a new trial.

---

evidence that the victim was the first aggressor;

"(c) Evidence of the character of a witness, as provided in ORS 40.345 to 40.355; or

"(d) Evidence of the character of a party for violent behavior offered in a civil assault and battery case when self-defense is pleaded and there is evidence to support such defense.

"(3) Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[3] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."